IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

XIAFEN BOZARTH,

       Plaintiff,                  No. CIV S-04-2269 GGH

     vs.

JO ANNE B. BARNHART,        <u>ORDER</u>
Commissioner of
Social Security,

       Defendant.
_____/

       Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

<u>BACKGROUND</u>

       Plaintiff, born May 6, 1959, applied on April 3, 2003 for disability benefits. (Tr. at 42.) Plaintiff alleged she was unable to work since November 22, 2002 due to back pain, blindness in the left eye and pain in the right eye. (Tr. at 42, 71.)

\\\\\

\\\\\

1

In a decision dated June 23, 2004, ALJ L. Kalei Fong determined plaintiff was not disabled. The ALJ made the following findings:[1]

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 3. The claimant's scoliosis and blindness in one eye are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> 4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

\\\\\

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

|   |   |   |
|---|---|---|
| 5. | | The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision. |
| 6. | | The claimant has the following residual functional capacity: light work with on [sic] more than occasional stooping, balancing, crouching, crawling, kneeling, or climbing that does not require binocular vision. |
| 7. | | The claimant's past relevant work as service-bar attendant, cashier, and accounts clerk did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565). |
| 8. | | The claimant's impairments do not prevent the claimant from performing her past relevant work. |
| 9. | | The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR § 404.1520(f)). |

(Tr. at 21-22.)

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the ALJ Failed to Obtain a Meaningful Waiver of Her Right to Counsel and Failed to Develop the Record; B. Whether the ALJ Erred in Rejecting Plaintiff's Statements Regarding the Nature and Extent of Her Pain and Functional Limitations; and C. Whether the ALJ Erred in Finding Plaintiff Capable of Performing Her Past Relevant Work.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

(1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

      A. The ALJ Did Not Fail to Obtain a Meaningful Waiver of Plaintiff's Right to Counsel and Did Not Fail to Develop the Record

      Plaintiff contends that the ALJ failed to inform plaintiff of her right to counsel at the hearing, and this duty should have been even more heightened because plaintiff's primary language is not English.

      Plaintiff has a statutory right to counsel at the administrative hearing which may be knowingly and intelligently waived. Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal. 1984), citing Ware v. Schweiker, 651 F.2d 408 (5th Cir. 1982), Floyd v. Schweiker, 550 F. Supp. 863 (N.D. Ill. 1982). Even if the waiver is deficient, plaintiff must demonstrate prejudice or unfairness in the proceedings in order to obtain a remand. Hall v. Secretary of Health, Educ. & Welfare, 602 F.2d 1372, 1378 (9th Cir. 1979). The real issue, however, is not whether the waiver was knowing or intelligent, but whether without the representation, the ALJ met his burden "to conscientiously and scrupulously probe into, inquire of, and explore for all the relevant facts" in order to protect plaintiff's interest. Id., quoting Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981); Cox v. Califano, 587 F.2d 988 (9th Cir. 1978). This duty includes diligently ensuring that both favorable and unfavorable facts and circumstances are elicited at hearing. Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985). The ALJ must fully and fairly develop the record, and when a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144 (9th Cir. 2001). Only if the plaintiff can show prejudice or unfairness in the administrative proceeding as a result of not having counsel is

1  remand warranted.  Vidal, 637 F.2d at 713.

2          The colloquy at the hearing indicates that the ALJ fully questioned plaintiff

3  regarding representation at the hearing.  In order to illuminate the comprehensiveness of that

4  examination, the full text of that line of questioning is repeated here.

5          ALJ: ... Now, before I begin, Mrs. Bozarth, you are here without

6          representation, do you wish to proceed today without

7          representation?  Do you know what that means?

8          CLMT: Would you please repeat it again?

9          ALJ: Yeah. You are here without an attorney or a representative.

10         CLMT: Yeah, that's fine.

11         ALJ: And is it okay to proceed today even though you don't have a

12         representative here today.

13         CLMT: I'd like to have one, but I have contact several attorneys,

14         and it seems to be busy.

15         ALJ: Seems what?

16         CLMT: Seems very busy.

17         ALJ: Oh, busy?

18         CLMT: Yeah, I contacted a couple.

19         ALJ: Uh-hum. Okay. So, do you feel that you would you would

20         [sic] prefer to proceed today without representation?

21         CLMT: It's okay, yeah.

22         ALJ: Okay. I mean, if you wanted more time to try to find

23         somebody, then I'd be willing to give you more time. Like another

24         couple of months if you think you'd need that much more time to

25         call more attorneys or more representatives.

26         CLMT: I think I can.

1       ALJ: So, we proceed today then?

2       CLMT: Yes.

3 (Tr. 187-188).

4     Plaintiff's argument does not cite to the full text and therefore her statements that plaintiff responded "I think I can" to the ALJ's offer of additional time to find an attorney is misleading. It appears that plaintiff was responding to the question asked previously, which was whether plaintiff wanted to proceed without representation. When the full text of the hearing transcript is examined, it is clear that the ALJ obtained a knowing and intelligent waiver, and that plaintiff wished to proceed with the hearing despite lack of counsel.

    Turning to the real question, whether the ALJ diligently explored all relevant facts in light of plaintiff's pro se status, the record indicates that she did. After questioning plaintiff about her right to a representative, the ALJ then asked whether plaintiff had reviewed her records, whether she needed more time to look them over, and whether she had any objections or problems with them. (Id. at 188.) The ALJ then asked plaintiff about her education and experience with the English language. Plaintiff responded that she learned English in China but did not speak it much there. (Id. at 191.) She has spoken it here since 1993 when she arrived in the United States, which was eleven years before the hearing. Plaintiff also had received an AA degree in accounting from "American College" in 1996. (Id. at 190.) The ALJ commented that plaintiff could speak and understand English pretty well now, but plaintiff responded that she did not think so, that she still could not understand sometimes. (Id. at 191.) The ALJ then questioned plaintiff about her three past jobs, what they entailed, and why she stopped working. (Id. at 191-94.) The ALJ also questioned plaintiff about her medical impairments. Plaintiff reported that she had been blind in her left eye since she was six years old. (Id. at 194.) The ALJ extensively questioned plaintiff about her vision in the right eye which plaintiff had reported was strained. (Id. at 194-96.) Plaintiff could not say what her vision was in this eye, but that she gets an exam from Kaiser every year. (Id.) The ALJ stated that she was going to request those Kaiser

1  records, and she did receive them subsequent to the hearing.  She also questioned plaintiff about
2  her back problems and treatment.  (Id. at 196-98, 199-200.)  Plaintiff interjected information
3  about her diarrhea, heartburn and breast pain without being asked, indicating that she could
4  adequately convey information.  (Id. at 198.)  The ALJ asked plaintiff about her family and daily
5  activities.  (Id. at 201-03.)  The ALJ additionally asked whether she had missed any problems or
6  whether there was anything else plaintiff wanted to discuss regarding her inability to work.  (Id.
7  at 203.)  Plaintiff responded that everything was covered, and then added unsolicited testimony
8  about Kaiser's referral to a physical therapist, and related information about her stiffness and
9  pain.  (Id. at 204-05.)  Finally, the ALJ talked to plaintiff about her medical records and obtaining
10 more records to fill in missing information.  (Id. at 206-07.)

11         Plaintiff asserts that the ALJ failed to question her about her pain, and instead
12 testified for her by asking, "You have scoliosis, but according to the doctor, it's mild.  It's not a
13 problem yet?"  (Id. at 197.)  On the contrary, the ALJ asked plaintiff whether she had missed
14 anything, and plaintiff spent some time discussing her pain, prompting more questions from the
15 ALJ.  (Tr. at 204.)  Plaintiff testified that she was stiff in the morning, that the pain causes her to
16 need to urinate frequently.  The ALJ then asked plaintiff about  frequency of the pain,
17 acknowledging it to be severe.  (Id. at 205.)

18         In regard to plaintiff's language problems in describing her pain, the record
19 indicates that although plaintiff did respond with a confusing answer, as set forth below, she
20 described her pain sufficiently:
21         A ... I don't lift heavy things and I can do light housework.  I
22         cannot sit and stand a long time because it make me comfortable
23         like that - - makes me uncomfortable.
24         Q So, how long can you sit in comfort before you have to –
25         A It depends, when I suffer serious pain, I even can't sit.  I have to
26         like this sit down.  But when I'm okay, I'm fine.

1  Q All right.  So, you're indicating that you have to push up with
2  your hands, your arms, using your arms to kind of push yourself
3  up.
4  A Yeah, like this, when I suffer severe pain.
5  Q All right. Now, how often do you have this severe pain still?
6  A If I – I just don't cannot walk to hard like ever walk a little bit
7  harder, feel it a little bit hard, then I will suffer severe pain.

(Tr. at 203.)

At this point, the ALJ asked whether there were any other problems she had missed.  Although this last question and answer is a little confusing, the remainder of the record clarifies the pain testimony, including Tr. 204-205, and is complete.

In regard to plaintiff's right eye strain, the ALJ did ask plaintiff about her vision in this eye, as discussed above, and when plaintiff did not know the answer, the ALJ proceeded to obtain the records.  As defendant correctly urges,

> The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. *See* Glass, 43 F.3d at 1396. The standard is one of reasonable good judgment. The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.' Baca v. Department of Health & Human Servs., 5 F.3d 476, 479-80 (10th Cir.1993).

Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997).

Furthermore, plaintiff can only establish an impairment if the record includes signs – the results of "medically acceptable clinical diagnostic techniques," such as tests – as well as symptoms, i.e., plaintiff's representations regarding his impairment.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005).  In this case, the record does not reveal any evidence of headaches or eye strain, and therefore the ALJ's duty did not extend to developing these mere symptoms.  In fact, plaintiff did not offer these two problems as presenting symptoms to Dr. Bonrazavi.  (Tr. at 108.)  Moreover, the treatment records indicate that although plaintiff

complained of various other ailments, she did not once complain of headaches or eye strain in the right eye. The ALJ did not have a duty to be plaintiff's advocate in meeting her burden. <u>Henrie v. United States Dep't of Health & Human Servs.</u>, 13 F.3d 359, 361 (10th Cir.1993). Plaintiff has the ultimate burden of proof to produce the evidence that demonstrates she is disabled, 20 CFR § 404.1512(a)**;** <u>Bowen</u>, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.

Moreover, the ALJ ordered extra treating records after the hearing, and considered the medical records and other evidence in addition to the hearing testimony which provided ample information for her to comply with her duty. In this case, the ALJ fully and fairly developed the record for a fair adjudication.

### B. The ALJ Properly Assessed Plaintiff's Credibility

Plaintiff asserts that the ALJ failed to credit plaintiff's statements regarding the nature and extent of her pain and functional limitations.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ who used the proper process and provided proper reasons. <u>See, e.g.</u>, <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may not find subjective complaints incredible solely because objective medical evidence does not quantify them. <u>Id.</u> at 345-46. If the record contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating factors, medication, treatment, and functional restrictions. <u>See id.</u> at 345-47. The ALJ also may consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

9

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) daily activities.[2] Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct, may also be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990). Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony must be clear and convincing. Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In this case, the ALJ found the plaintiff to be only somewhat credible. She found credible plaintiff's claims of intermittent back pain and her statements that she cares for her six year old child, performs light chores, and cooks. (Tr. at 20.) The ALJ found her claims of restrictions in sitting, standing, walking and lifting to be not credible. In support, the ALJ cited minimal medical treatment with objective findings of only mild scoliosis. Although plaintiff had a reduced range of motion, there were no neurological or strength deficits. Plaintiff took only mild over the counter pain medication. (Id.) Plaintiff had chiropractic treatment with good results. No physicians had recommended further testing or surgery. (Id. at 21.) In addition to the above mentioned activities, the ALJ noted that plaintiff took short daily walks which improved her back pain. (Id.)

\\\\\

---

[2] Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

The records bear out the ALJ's findings. Of the scant 33 pages of treating records in the file, only a few pages relate to plaintiff's back problems. On July 20, 2000, she was diagnosed with mild thoracic pain, probably as a result of lifting her baby. At this time, the pain was improving. (Tr. at 177.) Plaintiff was told to take (non-prescription) Tylenol, rest and apply ice to the area. (Id.) On November 1, 2000, plaintiff was diagnosed with chronic back pain, and was referred for a physical therapy evaluation which she then cancelled. (Id. at 172, 173.) Exam indicated slight scoliosis with no localized tenderness. (Id. at 173.) There are no records indicating that plaintiff ever actually began physical therapy. Unfortunately, these few records predate plaintiff's period of disability by about two years.

Only one of the back records relates to the period when plaintiff claims her disability began, November 22, 2002. It is an x-ray, dated October 3, 2003, indicating lumbar scoliosis. (Tr. at 170.)

Plaintiff did obtain chiropractic treatment but it also predated her disability period. In fact, Dr. Anderson responded on August 19, 2003, to the disability analyst's request by stating that he could not give an opinion about plaintiff's disability because he had not examined her since September, 2001. (Tr. at 126.) Plaintiff saw this chiropractor between February 28, 2000 and September, 2001 only. (Tr. at 126-55.) She did not undergo chiropractic services between September, 2001 and the April, 2004 hearing. Dr. Anderson summarized his treatment of plaintiff for scoliosis, thoracic vertebral subluxation complex, lumbar vertebral subluxation complex, segmental dysfunction of the ribs, and cervical subluxation complex, based on tenderness on exam and x-ray indicating spinal deformities on September 29, 2000. (Tr. at 127.) Treatment included chiropractic adjustments, electrical muscle stimulation, moist heat and intersegmental traction. (Id.) During one year of treatment, plaintiff's range of motion had improved 25 percent and pain was reduced in frequency and severity by approximately 40 to 50 percent. After this time period, it was recommended that plaintiff obtain maintenance care one time per week. In September, 2001, plaintiff discontinued all treatment. (Id.)

11

1        Further contradicting plaintiff's claims is the consultative report of Dr. Bonrazavi on July 13, 2003, which concluded that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, could stand, sit and walk up to six hours in a work day, and that her only restriction was that she could not perform a job which required binocular vision due to blindness in her left eye. (Tr. at 112-13.) This internist based his evaluation on his exam which indicated mild scoliosis, no CVA tenderness, and straight leg raising that was negative at 90 degrees. The doctor noted, "range of motion is forward flexion 70/90 degrees, extension 10/25 degrees, and lateral flexion 15/25 degrees bilaterally." (Id. at 110.) Range of motion in all other areas was normal. (Id. at 111.)

        Plaintiff showed improvement with chiropractic treatment, then abruptly discontinued treatment prior to her disability onset date, and obtained no back treatment since the date at issue. Plaintiff testified at the April 22, 2004 hearing that she currently visits a chiropractor every three to four weeks; however, there is no medical record to support this recent treatment and Dr. Anderson stated he had not treated plaintiff since 2001. (Tr. at 200, 126.) There is a dearth of medical records in the file, and those present indicate that she needed only mild non-prescription medication for pain. Furthermore, although Kaiser referred plaintiff for physical therapy, she cancelled her appointment for evaluation, and it does not appear that she followed through. (Tr. at 172.) Additionally, plaintiff's scoliosis did not require a brace and no other treatment or surgery was recommended for it, supporting the finding that this minor scoliosis was not disabling.

        The ALJ was also entitled to resolve the conflict between plaintiff's statement that she takes short daily walks to relieve the pain and her testimony at hearing that she has severe pain when she walks. (Tr. at 68, 203.) Plaintiff's daily activities questionnaire adds that she is able to do grocery shopping once or twice a week, makes the bed, dusts, vacuums, and drives the car about an hour each day. (Id. at 68-69.)

\\\\\

Plaintiff objects to the ALJ's reliance on the lack of objective evidence to support his finding of lack of severity of pain; however, plaintiff has the burden to come forward with evidence of a disability and the record as a whole does not support the level of pain or functional limitation expressed by plaintiff. Substantial evidence supports the ALJ's credibility finding.

C.  Past Relevant Work

Finally, plaintiff contends that the ALJ erred in finding that plaintiff could do her past work as a service bar attendant, cashier, or accounts clerk, arguing that her scoliosis, left eye blindness, and dyspepsia prevent her from performing this work.

The ALJ found that plaintiff could do these jobs and they "involved lifting within the parameters of light work, and required no more than occasional stooping, balancing, crouching, crawling, kneeling, or climbing." (Tr. at 21.)

"Light" work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds while mainly standing and walking. 20 CFR 404.1567(b). Light work can involve standing and walking off and on for up to six hours, and sitting during the remaining time. SSR 83-10 (1983). It may otherwise involve sitting most of the time with use of arm-hand or leg-foot controls which require pushing and pulling. Most light jobs require only occasional stooping. Id.

Plaintiff bears the burden of proving she suffers from a physical or mental impairment that makes her unable to perform "past relevant work." Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir.1995). Plaintiff cannot merely show she is incapable of performing the particular job she once did; she must prove she cannot return to the same type of work. Villa v. Heckler, 797 F.2d 794, 798 (9th Cir.1986). In determining whether a disability applicant can perform past work, the Commissioner may consider work as it was actually performed, or as it is normally performed in the national economy. The ALJ determines the demands of a past job and compares the demands to current RFC. Villa, 797 F.2d at 798.

\\\\\

1    The ALJ found plaintiff's past jobs to be limited to light work with only
occasional stooping, balancing, crouching, crawling, kneeling or climbing.[3]  It was not necessary
for the Commissioner to call a vocational expert because the production burden never shifted to
the Commissioner.  See Miller v. Heckler, 770 F.2d 845, 850 (9th Cir.1985).

   Likewise, the ALJ was not required to call a vocational expert based on plaintiff's
claim that she had exertional and nonexertional limitations due to scoliosis, left eye blindness,
and dyspepsia.  The scoliosis limitation has already been properly rejected in Section B supra.
Dyspepsia was not raised as a limitation until now, and will therefore not be addressed.  See
hearing transcript, ALJ Decision, Disability Report.  (Tr. 48).  The ALJ also noted that plaintiff
has been blind since six years of age, and was able to perform all of her past work with this
limitation, and she has not experienced a decrease in vision since that time.  (Tr. at 21.)  The ALJ
may consider the testimony of a vocational expert to determine if plaintiff can do her past
relevant work; however, the ALJ is not required to call such an expert at the fourth step.
Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993).  See also Crane v. Shalala, 76 F.3d 251,
255 (9th Cir. 1996) (since ALJ found plaintiff could do his past work at step four, there was no
need to call a vocational expert for step five).

   This circuit has held that only if a nonexertional impairment is significant enough
to limit plaintiff's work *in a certain category* must the ALJ resort to a vocational expert.
Perimeter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) (finding lack of evidence of ability to
perform specific jobs; Blackall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983)).  See also Ode
v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional abilities in
order to depart from the grids).  In this case, plaintiff has no nonexertional impairments and the
analysis properly ends at step four.  Consequently, a vocational expert was not required.  Plaintiff
\\\\\

---

[3] It should be noted that the ALJ properly found that "[t]here are no medical opinions assessing more restrictive functional limitations."  (Tr. at 20.)

14

has also failed to show that she could not return to any of her previous jobs, and therefore the burden of proof remained with her.

### D. Past Work as Substantial Gainful Activity

Plaintiff next contends that the ALJ erred in finding that her past work qualified as substantial gainful activity in the past fifteen years. "'Substantial gainful activity' is: ... work activity that 'involves doing significant physical or mental activities' on a full or part-time basis, and is the 'kind of work usually done for pay or profit, whether or not a profit is realized.'" 20 C.F.R. §§ 416.972(a) & (b). Byington v. Chater, 76 F.3d 246, 248 (9th Cir. 1995) citing Katz v. Sec. HHS, 972 F.2d 290, 292 (9th Cir. 1990).

> The concept of substantial gainful activity involves the amount of compensation and the substantiality and gainfulness of the activity itself. 20 C.F.R. § 404.1532(b); Chicager v. Califano, 574 F.2d 161, 163 (3d Cir.1978). The mere existence of earnings over the statutory minimum is not dispositive. Chicager, 574 F.2d at 163. However, there is a presumption of substantial gainful employment if the applicant earns over the amount specified in the guidelines. 20 C.F.R. §§ 404.1574(b)(2), 404.1575(b)(2); Josefowicz v. Heckler, 811 F.2d 1352, 1356 (10th Cir.1987). The claimant may rebut a presumption based on earnings with evidence of his inability to be self-employed or to perform the job well, without special assistance, or for only brief periods of time. Anderson v. Heckler, 726 F.2d 455, 456 (8th Cir.1984).

Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990).

In regard to plaintiff's claim that she worked only part time at her previous jobs, and only for four months as part-time cashier and eight months as a part-time accounts clerk, it is true that sporadic substantial gainful activity during the period of alleged disability might permit ignoring of the abortive work. See Gatliff v. Commissioner of Social Sec. Admin., 172 F.3d 690, 692 (9th Cir. 1999). In Gatliff, the court found that two months was not a significant period of time and that eleven months is a significant period. Id. at 694, 693.

Clearly, plaintiff's work as cashier and accounts clerk did not last long enough to be considered a significant period. (Tr. at 60.) Any failure by the ALJ in finding that these two jobs constituted past relevant work was harmless, however, because plaintiff's other job as

service bar attendant lasted a significant length of time.  An error which has no effect on the ultimate decision is harmless.  Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).  The service bar attendant job lasted nine years, from 1993 to 2002, with an eight month break from 1996 to 1997 during which plaintiff worked as accounts clerk.  (Id.)  Assuming without deciding that plaintiff's 1996 and/or 1997 earnings are attributable to the accounts clerk job which was too short in duration, it appears that the only years where plaintiff earned above the minimum amount to show a presumption of substantial gainful activity were 1994 and 1995.  (Tr. at 46.)  See 20 C.F.R. § 404.1574(b)(2) (more than $500.00/month for years 1990 to June, 1999, and more than $700.00/month for years July, 1999 through December, 2000 are earnings that ordinarily show substantial gainful activity).  Although plaintiff only earned $514.22 per month in 1994 for total annual earnings of $6,170.64 and $764.32 per month for a total of $9,171.88 in 1995, the fact that she did this job for nine years is persuasive of her ability to perform it on a more full time basis, especially in light of the remainder of the record indicating her functional ability.  "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity."  Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001).  Moreover, there are other ways to establish substantial gainful activity.  Substantial work activity involves doing significant physical or mental activity, even if it is done on a part time basis.  20 CFR § 404.1572(a); Keyes, 894 F.2d at 1056.

In describing the service bar attendant job, plaintiff stated that she stocked beverages in each room, and lifted sodas and snacks.  (Tr. at 62.)  Plaintiff stated that she walked and stood for two hours a day, sat for one hour, stooped for one hour, kneeled for one hour, and used finger manipulation for one hour.  She lifted less than ten pounds at most.  She did no climbing, crouching or crawling.  (Id.)  This description is consistent with plaintiff's functional capacity as outlined by Dr. Bonrazavi and the DDS assessments.  (Tr. at 112-13, 116-25, 156-63.)

\\\\\

As for plaintiff's claim that she needs to rest for one to two hours a day on some days, there is no evidence to support it other than plaintiff's self serving statements which were properly rejected by the ALJ.

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the Clerk is directed to enter Judgment for the Commissioner.

DATED: 2/10/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Bozarth2269.ss.wpd